JAMES EARL JONES,                      Civil Action No. 14-6182 (NLH)

       Petitioner,

    v.                                    **OPINION**

WARDEN OF NEW JERSEY
       STATE PRISON, *et al.*,

       Respondents.

**HILLMAN, DISTRICT JUDGE**

Before the Court is the Amended Petition for a writ of
habeas corpus of Petitioner James Earl Jones, ("Petitioner")
brought pursuant to 28 U.S.C. § 2254. ECF No. 6. For the
reasons set forth below, Petitioner's habeas petition is **DENIED**,
and Petitioner is **DENIED** a certificate of appealability.

I.   <u>BACKGROUND</u>

The following factual summary is taken from the opinion of
the Superior Court of New Jersey, Appellate Division, on
Petitioner's direct appeal:

> In the early hours of June 29, 1990, Hope
> Stauffer drove her two brothers, Robert and
> Timothy, and a friend, David Ray ("Ray"), to
> the Rosedale Tavern in Pennsauken to purchase
> wine coolers. Hope's four-year-old son, M.S.,
> was also in the car with them. Hope and her
> son remained in the car which was parked in
> the Rosedale Tavern parking lot, while the
> Stauffer brothers and Ray went inside the
> tavern. The three men were gone approximately
> five to fifteen minutes. Before entering the

tavern, Timothy Stauffer noticed three males sitting in the back of a black pick-up truck.

According to defendant's second taped statement that was played at trial, defendant and co-defendant Bell hitched a ride in a black pick-up truck to the Rosedale Tavern. Defendant claimed that after spotting Hope in the parking lot, Bell ran over to her and put a "snub nose thirty-eight" gun to her head. Bell demanded Hope to "move over Bitch" as he got into the driver's side of the car. He then moved M.S. from the front seat to the back seat. Defendant got into the passenger side of the car. While Bell drove off from the parking lot, he threatened Hope that "he would shoot her if she [did] something stupid." Hope was crying and begging the two defendants not to hurt her son.

After driving to a field, Bell forced Hope out of the car, grabbing her by the wrist while keeping the gun pointed towards her. Defendant followed Bell and the victim into a wooded area. Defendant forced Hope to the ground, onto a tan cushion, by choking her. While defendant continued to choke Hope, Bell "stood to the side with the pistol out" threatening, "Bitch, I'll shoot you act stupid, bitch, I'd shoot you, you act stupid." As Hope struggled, she begged defendant to, "please get off me, please get off me."

Bell put the pistol in his pants and also began choking Hope again with more force. Defendant continued holding Hope by the neck while Bell pulled her clothes off. Defendant claimed that Bell persisted choking Hope while he had sex with her. After about five minutes, defendant ejaculated and "just left, cause I knew she was dead then." Defendant stated that in his mind, as he "was getting ready ...[to] stick [his] penis in her, she was not alive at all." Defendant later stated that when he had "gotten on top of [Hope]" her body was shaking and it did not stop shaking until Bell "put his hands around her neck for a short period of time." Once defendant finished the

sexual assault, he noticed that the victim was
"out of it"; he checked for a pulse but did
not feel one.  When asked whether the victim
was dead while he had intercourse with her,
defendant responded:

> There was no doubt at all, once I
> had finish coming to the end of
> having intercourse with her, that
> she was dead.

. . .

The autopsy established that Hope died from
strangulation.  She suffered hemorrhaging and
muscle bruising in the neck, including the
thyroid gland and larynx.  The hemorrhaging
and bruising ranged from one-half to one inch
deep from the skin.  The autopsy also revealed
a one-inch laceration of the tissue between
her vagina and rectum, indicative of sexual
assault.  In addition, she suffered a series
of injuries including significant purple
discoloration of the neck, chest and face;
scrapes on the right shoulder, left forearm,
left thigh, nose and chin; and bruising to the
left shoulder.

According to Dr. Segal, the county medical
examiner,

> The strangulation
> occurred when she was
> alive, the laceration of
> the perineum when she was
> alive, and majority of
> the scrape marks and
> bruises when she was
> alive....  The clearly
> postmortem injuries were
> the scratch marks on the
> lower legs, both sides
> ... [and the] insect
> bites.

With regard to the sexual assault, although
nonmotile sperm were detected through
microscopic examinations of the vaginal
material, Dr. Segal stated that "there's no

> way to say whether the sperm got there when
> the person was alive or dead."

ECF No. 12-10 at 4-9.

> The jury . . . found defendant guilty of the
> murder of Hope Stauffer, contrary
> to N.J.S.A. 2C:11-3a(1) (count one); felony
> murder, contrary to *N.J.S.A.* 2C:11-3a(3)
> (count three); first degree kidnapping of Hope
> Stauffer, contrary to N.J.S.A. 2C:13-1b(1)(2)
> (count four); second degree kidnapping of Hope
> Stauffer's son, M.S., contrary
> to N.J.S.A. 2C:13-1b(1)(2) (count five);
> conspiracy to commit robbery, contrary
> to N.J.S.A. 2C:5-2 (count six); first degree
> robbery, contrary to N.J.S.A. 2C:15-1 (count
> seven); possession of a weapon for an unlawful
> purpose, contrary to N.J.S.A. 2C:39-4a (count
> eight); unlawful possession of a weapon,
> contrary to N.J.S.A. 2C:39-5b (count nine);
> and first degree aggravated sexual assault,
> contrary to N.J.S.A. 2C:14-2a(3) (count
> eleven). Count ten, charging defendant with
> third degree hindering apprehension or
> prosecution, contrary to N.J.S.A. 2C:29-
> 3b(1), and count twelve, charging defendant
> with fourth degree hindering apprehension,
> contrary to N.J.S.A. 2C:29-3b(4), were
> dismissed by the trial judge during trial.

Id. at 1-2.

Petitioner was sentenced to an aggregate prison term of
life, plus 60 years, with a 60-year period of parole
ineligibility. Id. at 3.

Petitioner appealed his judgment and conviction to the
Superior Court of New Jersey, Appellate Division, and the
Appellate Division affirmed on February 11, 1998. Id. at 1.
The New Jersey Supreme Court denied certification on June 3,
1998. See State v. Jones, 718 A.2d 805 (1998). According to

4

the New Jersey Superior Court, Appellate Division, in affirming

the denial of PCR, which laid out the relevant procedural

history, Petitioner filed an initial post-conviction relief

("PCR") petition on February 19, 1999 ("Initial PCR Petition"),

which was dismissed without explanation on May 7, 1999.[1]  ECF No.

12-32 at 3.  Petitioner submitted a subsequent petition for PCR

("Subsequent PCR Petition"), ECF No. 12-18, which was denied by

the trial court on August 31, 2010.[2]  ECF No. 12-27.  The

Appellate Division affirmed the denial of PCR on December 18,

2013.  ECF No. 12-32.  The New Jersey Supreme Court denied

certification on June 23, 2014.  See State v. Jones, 94 A.3d 911

---

[1]     In the instant habeas petition, Petitioner dates the
Initial PCR Petition as January 22, 1999, ECF No. 6 at 5, and
the State dates it as February 22, 1999.  See ECF No. 12-49 at
3, containing the State's "Table of Appendix", wherein they
title and date the relevant documents.  The actual document of
the Initial PCR Petition, provided by the State, contains the
typed date of February 1, 2008, and the stamped date is not
legible.  ECF No. 12-16.

[2]     With respect to the date the Subsequent PCR Petition was
filed, the State has provided what appears to be an identical
document to the Initial PCR Petition, both of which contain the
typed date of February 1, 2008, and illegible stamped dates.
ECF No. 12-18 at 1.  Respondents argue the correct date of the
filing "as reflected by the stamp in the upper right hand
corner" is March 11, 2008.  ECF No. 12 at 7.  The New Jersey
Appellate Court, in affirming the denial of PCR, dates this
petition as October 16, 2008.  ECF No. 12-32 at 3.  Petitioner,
in the instant habeas Petition, dates the filing of his
Subsequent PCR Petition as May 12, 1999.  ECF No. 6 at 6.  Based
on the various dates reflected in the record, the Court will
assume it was filed in 1999, in Petitioner's favor.

(2014). Petitioner then filed a habeas petition with this Court, executed on October 1, 2014. ECF No. 1. The petition was administratively terminated and Petitioner submitted an Amended Petition, executed on January 21, 2016, raising three grounds for habeas relief:

1. Conviction obtained by the unconstitutional failure of the trial court to provide[] correct instructions on accomplice liability.

2. Conviction obtained by trial judge erroneously prevented defense counsel from arguing in summation that the lack of fracture to the victim's hyoid bone and larynx was evidence that defendant's conduct had been reckless, rather th[a]n purposeful or knowing[,] violated petitioner's constitutional right to a wide latitude in making his summation.

3. Defendant's conviction on the eleventh count of the indictment must be and the count dismissed as N.J.S.A. 2C:14-2a(3) unconstitutionally sets up an irrebuttable presumption that an act of sexual penetration occurring during a murder is unconsented to; alternately, the court erred in failing to charge that the statute created a permissive inference only and that the State had to prove lack of consent beyond a reasonable doubt.

ECF No. 6 at 8-13.

Respondents filed an Answer, in which they argue that Petitioner's claims are time-barred, fail to raise federal issues, and are meritless. ECF No. 12 at 19-65. The Court will decline to address in detail whether the instant Amended

Petition is untimely, and instead finds the claims fail on the

merits.[3]

---

[3]     Because the State has provided this Court with documents in
which the stamped dates are illegible, as well as identical
documents for both PCR filings, the Court cannot adequately
address the issue of timeliness, as it relates to statutory
tolling.  See 28 U.S.C. § 2244(d)(2).  Moreover, Petitioner's
explanation for his delay in filing relates to the alleged
reassignment of counsel.  In the instant petition he writes:

> Petitioner filed a State Post Conviction
> Relief Petition on January 22, 1999[.] Due to
> the reassignment of two counsels[,] Post
> conviction relief petition sat dormant in the
> Superior Court of New Jersey Law Division from
> January 22, 1999 to August 31, 2010 when the
> petition was eventually denied. [The r]eason
> why the petition took over ten years to be
> resolved was attributed to the Public
> Defender's Office having to locate the
> previously assigned counsel for the return of
> petitioner's criminal case file.

ECF No. 6 at 17.

     In reviewing the record before this Court, attached to
Petitioner's Subsequent PCR Petition are multiple letters he
exchanged with the State of New Jersey Office of the Public
Defender ("Public Defender's Office"), in which he appears to
have repeatedly requested status updates related to his PCR
petition.  ECF No. 12-18 at 19-26.  In one such letter, dated
February 28, 2003, the Public Defender's Office wrote:

> Dear Mr. Jones:
>
> I am writing to let you know the status of
> your PCR.  It was pooled in 1999 to an
> attorney, who just this month returned the
> file without having completed any work.
> . . .
> I regret the extensive delay I am confident
> [your new attorney] will give your PCR the
> attention required.

## II.  **LEGAL STANDARD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court.  See Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013); see also Parker v. Matthews, 567 U.S. 37, 40–41 (2012).  Under 28 U.S.C. § 2244, district courts are required to give great deference to the determinations of the state trial and appellate courts.  See Renico v. Lett, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

ECF No. 12-18 at 23.

This delay may entitle Petitioner to equitable tolling.  See United States v. Johnson, 590 F. App'x 176, 179 (3d Cir. 2014).

>        (2) resulted in a decision that was based on
>        an unreasonable determination of the facts in
>        light of the evidence presented in the State
>        court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court.  <u>See</u> <u>Woods v. Donald</u>, 135 S. Ct. 1372, 1376 (2015).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  <u>Id.</u> Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. <u>DISCUSSION</u>

### A. Ground One: Jury Instructions

In Ground One, Petitioner states that the trial court failed to properly instruct the jury on accomplice liability because the instructions "were contrary to New Jersey Statute 2C:2-6."  ECF No. 6 at 9.

The New Jersey Appellate Division, on direct appeal, rejected this claim, explaining:

> Decisions of this court and our Supreme court have expressly approved the challenged instruction. See State v. Smith, 32 N.J. 501, 521 (1960) . . . As recently as 1994, this court has approved of the premise that,
>
>> while it is true that 'mere presence' at the scene of a crime does not in itself conclusively prove guilt, it is a circumstance to be considered with the other evidence in determining accomplice status under N.J.S.A, 2C:2-6c(1).
>
>> [State v. Dale, 271 N.J. Super. 334, 338 (App. Div. 1994).]
>
> Finally, when the trial court's instruction is read as a whole and the challenged portion is read in context, it becomes clear that the jury understood that an accomplice had to share the same purpose as the principal to be found guilty on the charged offense. See State v. Weeks, 107 N.J. 396, 403 (1987); State v. Beilkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993).

ECF No. 12-10 at 10.

It is not the role of federal courts to review state court jury instruction rulings that are based on state law. Rather, federal courts are required "to determine whether [a petitioner] 'is in custody in violation of the Constitution or laws or treaties of the United States.'" Barkley v. Ortiz, 209 F. App'x 120, 124 (3d Cir. 2006) (rejecting claim based on the failure to charge accomplice liability which was rooted in violations of

state law) (quoting 28 U.S.C. § 2254); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Consistent with this clearly established federal law, questions relating to jury charges are normally matters of state law and procedure, and they do not constitute claims for federal habeas review. "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71-72. Rather, the habeas court must consider "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process [under the Fourteenth Amendment] . . . not merely whether the instruction is undesirable, erroneous, or even universally condemned." Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (internal citations and quotations omitted). Instead, a habeas petitioner must establish that the instructional error "had [a] substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). The error must have resulted in "actual prejudice." Id. at 637. Further, it is "well established" that the instruction "may not be judged in artificial isolation," but must be viewed in the context of the overall charge and the trial record. Cupp v. Naughton, 414 U.S. 141, 146 (1973).

Here, as evidenced by the state court's opinion, the jury instruction rests purely on matters of state law and Petitioner fails to raise a constitutional issue. Indeed, Petitioner points to a New Jersey state law, N.J. Stat. Ann. § 2C:2-6, for the proposition that the jury instructions were unlawful. Because the claim rests purely on state law, it is not proper for federal habeas review. Nevertheless, even if this Court could somehow construe this as a federal claim, based upon the record, it is evident that Petitioner was not subject to actual prejudice as a result of the alleged ailing instruction. As correctly articulated by the state court, when the instruction is read in context, it is clear that the jury was adequately instructed that an accomplice must purposefully act to aid the principal, and that mere presence at the crime scene alone does not establish guilt. ECF No. 12-46 at 22-25. Therefore, Petitioner fails to show that he is entitled to relief on this claim.

### B. Ground Two: Trial Court Error

In Ground Two, Petitioner alleges that the trial judge erred by failing to permit defense counsel to argue, in summation, that the "jury could find defendant's actions were reckless because of the lack of a fracture of the hyoid bone near the larynx area." ECF No. 6 at 11.

The Appellate Division, on direct appeal, addressed this claim and rejected it, explaining:

> Defense counsel is entitled to wide latitude in making his or her summation. See State v. Reynolds, 41 N.J. 163, 176, 195 A.2d 449 (1963), cert. denied, 377 U.S. 1000, 84 S. Ct. 1930, 12 L. Ed. 2d 1050, reh'g denied, 379 U.S. 873, 85 S. Ct. 22, 13 L. Ed. 2d 80 (1964). Nevertheless, "[t]he scope of defendant's summation argument must not exceed the 'four corners of the evidence.'" State v. Loftin, 146 N.J. 295, 347 (1996) (quoting Reynolds, supra, 41 N.J. at 176). "The 'four corners' include the evidence and all reasonable inferences drawn therefrom." Ibid. (citing State v. Hill, 47 N.J. 490, 99, 221 A.2d 725 (1966)). Thus, it is proper for a trial court to preclude references in closing arguments to matters that have no basis in the evidence. Ibid.
>
> In this case, there was no evidence submitted at trial concerning the hyoid bone. Indeed, on appeal, defendant concedes that the medical examiner never expressly referred to the hyoid bone during his testimony. Clearly then any such reference by defense counsel would have exceeded the "four corners" of the evidence. The trial judge did not err in his ruling on this point.
>
> We are also satisfied that the defendant's argument required expert testimony to support it. The trial judge may require expert testimony when the matter to be dealt with is "so esoteric that jurors of common judgment and experience cannot" otherwise form a valid judgment as to the fact in issue without expert testimony. Butler v. Acme Markets, Inc., 89 N.J. 270, 283, 445 A.2d 1141 (1982) (citation omitted); see also Biunno, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 702.

Defense counsel wanted to argue to the jury
during his closing statement that:

> "You have testimony before you that
> the hyoid bone and larynx are
> intact; you can infer from that that
> the force necessary to break it was
> not present."

> The importance or non-importance of an intact
> hyoid bone, and how that reflects upon the
> pressure used to strangle someone and
> correspondingly upon the aggressor's state of
> mind, is a matter that is "esoteric" and is an
> issue upon which jurors of common judgment and
> experience could not form a valid judgment
> without expert testimony. See Butler,
> supra, 89 N.J. at 283, 445 A.2d 1141.

ECF No. 12-10 at 13-15.

This claim fails to raise a federal issue. Federal courts,

on habeas review, are only instructed to address claims raising

constitutional issues. Estelle, 502 U.S. at 68 (1991). To rise

to the level of a constitutional violation, a state court's

evidentiary error must be "of such magnitude as to undermine the

fundamental fairness of the entire trial." Keller v. Larkins,

251 F.3d 408, 413 (3d Cir. 2001). Further, the category of

infractions that violate 'fundamental fairness' is "very

narrow[]." Dowling v. United States, 493 U.S. 342, 352 (1990).

As reflected in the state court decision, this claim rests

purely on state law and fails to raise a federal issue.

Nevertheless, to the extent this can be construed as a federal

claim, the Court is satisfied that it did not render the trial

fundamentally unfair and the state court was correct in rejecting
this claim.   After the State objected to defense counsel raising
the lack of fracture in the hyoid bone on summation, the trial
judge sustained the objection explaining:

> THE COURT: You [defense counsel] are asking
> them [the jury] to infer from that, therefore,
> great pressure was not exerted.  I happen to
> agree with the prosecutor, that is anatomy and
> that's something that ordinarily calls for
> expert testimony.
>
> I'm certainly not about to take judicial
> notice of the fact that the -- whatever name
> that bone is was not fracture[d] means that
> there was a less degree of force applied than
> that which is purposeful or knowing.  That is
> a matter that I think requires expert
> testimony to assist the jury and in the
> absence of any expert testimony with respect
> to that, the objection is sustained.
>
> . . .
>
> It certainly has the capacity to mislead.  I
> don't know and you don't know the fact and
> more importantly the jury doesn't know.  The
> doctor was on the stand and it was not asked.
>
> The jury is going to be given a piece of
> argument that may or may not be scientifically
> correct.  I'm going to sustain the objection.

ECF No. 12-45 at 108–09.

As evidenced by this excerpt, the trial judge adequately
addressed the issue and explained on the record why he would not
allow that argument on summation.  Further, defense counsel had
ample opportunity to present a robust defense on summation,
which the record reflects he did.  ECF No. 12-45 at 111–43.  As

such, any alleged error on this specific issue did not render the trial fundamentally unfair, and Petitioner has failed to demonstrate that he is entitled to relief on this claim.

**C. Ground Three: Unconstitutional State Law**

In his final ground for habeas relief, Petitioner appears to argue that his sexual assault conviction should be dismissed because N.J. Stat. Ann. § 2C:14-2a(3) is unconstitutional, insofar as it creates an irrebuttable presumption that a sexual act committed during murder is unconsented to; or, in the alternative, if the statute does not create that presumption, the jury should have been instructed as such. ECF No. 6 at 13.

The Appellate Court, on direct appeal, addressed this issue and rejected it, explaining:

> Defendant was convicted of first degree aggravated sexual assault in violation of N.J.S.A. 2C:14-2a(3). That statute provides that a defendant will be guilty if the act of sexual penetration "is committed during the commission, or attempted commission, whether alone or with one or more other persons, of robbery, kidnapping, homicide, aggravated assault on another, burglary, arson or criminal escape." In the context of this case, defendant concedes that a knowing sexual penetration of another in the course of a homicide suffices to establish the offense.
>
> For the first time on appeal, however, defendant contends that the statute is unconstitutional if it is interpreted to permit his conviction without requiring the jury to be instructed that proof of the predicate underlying offense of homicide

16

creates only an inference that the sexual act was "unconsented to." In the absence of such an instruction, defendant contends that the "statute operates to create a hidden, conclusive presumption" that a "sex act occurring during a homicide occurs against the victim's will" and, thus, violates his federal and state constitutional rights. No such instruction was requested at trial, but the absence of such a request is not determinative of our resolution of this issue.

We conclude that lack of consent is not an element of the crime of sexual assault. The history of the adoption of our current law concerning sexual offenses has been thoroughly explored by the Supreme Court in In re M.T.S., 129 N.J. 422 (1992) and need not be repeated here. Suffice it to say that "in reforming the rape laws, the Legislature placed primary emphasis on the assaultive nature of the crime, altering its constituent elements so that they focus exclusively on the forceful or assaultive conduct of the defendant." Id. at 442. Thus, in redefining "rape consistent with the law of assault and battery," the Legislature decided "to eliminate non-consent and resistance from the substantive definition of the offense." Id. at 443.

In general, sexual assault is proven when the State offers evidence of sexual penetration in circumstances where a reasonable person would not believe that the victim had given "affirmative and freely-given permission ... to the specific act of sexual penetration." Id. at 444. Evidence of force against the victim "in excess of that inherent in the act of penetration" is sufficient proof of the latter element of the offense. Ibid.

We construe N.J.S.A. 2C:14-2a(3) to be a legislative determination that proof of one or more of the predicate crimes identified therein is all that is necessary to establish the absence of "affirmative and freely-given permission." Although it is difficult to

17

imagine circumstances, such as here, where the
victim of a kidnapping, robbery and homicide
would, nonetheless, affirmatively and freely
give permission to the act of sexual
penetration, such a reading of the statute
leaves open the possibility that such could be
the case. And in that rare case, the evidence
pertaining to consent would be relevant on the
issue of the force used to commit the act of
penetration. See State v. Cuni, 303 N.J.
Super. 584 (App. Div.) (holding that evidence
of consent is relevant where the first degree
aggravated assault was predicated on the
commission of a burglary with intent to commit
second degree sexual assault), certif. denied,
152 N.J. 12 (1997); Cannel, N.J. Criminal Code
Annotated, comment on N.J.S.A. 2C:14-5 (1997-
98). Although we are cognizant of the
argument that the statute can be interpreted
to eliminate consent as a relevant factor
where the circumstances are as identified in
N.J.S.A. 2C:14-2a(3), that intent is not
manifestly clear from the words of the statute
or the relevant statutory history. Cannel,
Criminal Code Annotated, supra. Allowing the
introduction of such evidence in the rare
case, however, gives a defendant all the
process that is due to an accused under such
circumstances.

In this case, there were simply no facts upon
which the issue of consent could rationally be
considered by the trier of fact. Accordingly,
the trial judge did not err in his
instructions to the jury.

ECF No. 12-10 at 15–17.

As a general matter, states are free to define criminal

offenses as they see fit. See Smith v. Horn, 120 F.3d 400, 414

(3d Cir. 1997). Further, the Supreme Court has explained:

[I]in determining what facts must be proved
beyond a reasonable doubt the state
legislature's definition of the elements of

> the offense is usually dispositive: [T]he Due
> Process Clause requires the prosecution to
> prove beyond a reasonable doubt all of the
> elements *included in the definition of the
> offense* of which the defendant is charged.
> While there are obviously constitutional
> limits beyond which the States may not go in
> this regard . . . [t]he applicability of the
> reasonable-doubt standard . . . has always
> been dependent on how a State defines the
> offense that is charged in any given case.

McMillan v. Pennsylvania, 477 U.S. 79, 85 (1986) (emphasis in

original) (internal citations and quotations omitted).

While McMillan addressed whether state mandatory sentencing

guidelines violate Due Process by appearing to eliminate

significant elements of certain offenses, the analysis is

instructive here. Petitioner argues that the state statue is

unconstitutional because it eliminates the element of consent.

In other words, the statute permits a jury to find aggravated

sexual assault where it is committed during a homicide, or other

predicate crime identified therein, without first requiring a

jury to find, beyond a reasonable doubt, that the sexual act was

unconsented to. The state court laid out the relevant

legislative intent employed in defining the offense, and that

definition is generally dispositive for our purposes. See

McMillan, 477 U.S. at 85. This Court finds no constitutional

defect in the state's definition of aggravated sexual assault.

The state court explained that the statute does in fact allow

evidence related to consent to be introduced in cases where,

unlike here, that evidence is relevant.  ECF No. 12-10 at 17.

Based upon this, the Court is satisfied that the statute does

not violate Due Process.  Further, to the extent the jury was

not instructed regarding consent, the Court agrees with the

state court that no facts were present to demonstrate consent,

such that the judge did not err in failing to instruct the jury

on that point.  Because the state court did not violate clearly

established law in rejecting this claim, this Court denies

habeas relief on this ground.

### IV.  CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from

a final order in a habeas proceeding where that petitioner's

detention arises out of his state court conviction unless he has

"made a substantial showing of the denial of a constitutional

right."  "A petitioner satisfies this standard by demonstrating

that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could

conclude that the issues presented here are adequate to deserve

encouragement to proceed further."  Miller-El v. Cockrell, 537

U.S. 322, 327 (2003).  Because jurists of reason would not

disagree with this Court's conclusion that Petitioner has failed

to make a substantial showing of the denial of a constitutional

right insofar as Petitioner's claims are without merit,

Petitioner's Amended Petition is inadequate to deserve

encouragement to proceed further.  As such, a certificate of appealability is denied.

V.  **CONCLUSION**

For the reasons stated above, Petitioner's Amended Petition for habeas relief will be denied and Petitioner will be further denied a certificate of appealability.  An appropriate order follows.


Dated: March 19, 2018              s/ Noel L. Hillman
At Camden, New Jersey              Noel L. Hillman
                                   United States District Judge